**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| CHANTEL MANUEL AND HARRIET MANUEL, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | CIVIL ACTION NO. 2:23-CV-290 |
| vs. | |
| SOUTHWEST LOUISIANA HEALTH CARE SYSTEM, INC. d/b/a LAKE CHARLES MEMORIAL HEALTH SYSTEM, | |
| Defendant. | |

## NOTICE OF REMOVAL

Defendant Southwest Louisiana Health Care System, Inc., d/b/a Lake Charles Memorial Health System ("Defendant") files this Notice of Removal, in accordance with 28 U.S.C. §§ 1332, 1441, 1446 and 1453, to remove this action filed by Plaintiffs Chantel Manuel and Harriet Manuel ("Plaintiffs") from the 14th Judicial District Court of Louisiana, Parish of Calcasieu, Case No. 2023-000173-Div. G, to the United States District Court for the Western District of Louisiana, Lake Charles Division. In support of removal, Defendant states as follows:

## NATURE OF THE REMOVED ACTION

1. On January 11, 2023, Plaintiffs filed a Class Action Complaint ("Complaint") in the 14th Judicial District Court of Louisiana, Parish of Calcasieu, Case No. 2023-000173-Div. G against Defendant (the "State Court Action"). A true and correct copy of the Complaint is appended hereto as **Exhibit A**.

2. This putative class action arises out of an October 2022 data security incident involving Defendant's computer network (the "Incident"). *See* Ex. A, ¶ 4; Defendant's Notice,

*available at* https://www.lcmh.com/cybersecurity/ (last visited Feb. 27, 2023).

3. This action is the fourth-filed of currently nine putative class actions pending against Defendant on behalf of a purported class of individuals whose personal information was allegedly subject to unauthorized access as a result of the Incident. The other eight cases are, by filing date: (i) *Felicia Anderson v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00019 (W.D. La. filed Feb. 5, 2023); (ii) *Annette Salinas, Melissa Douga, Russell Murray, Matthew Miller, and Richard O'Quain v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0090-Div. D (Calcasieu Parish, La. filed Jan. 5, 2023); (iii) *Joseph Martin and M.M. (minor) v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0142-Div. H (Calcasieu Parish, La. filed Jan. 10, 2023); (iv) *Lisa Guillory v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0174-Div. F (Calcasieu Parish, La. filed Jan. 11, 2023); (v) *Laci L. Butler, Courtni Goodwin (minor), and Christopher Soileau v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00048 (W.D. La. Jan. 12, 2023); (vi) *George Navarro v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-0218-Div. H (Calcasieu Parish, La. filed Jan. 13, 2023); (vii) *Elando Tellis v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00143-JDC-KK (W.D. La. filed Feb. 2, 2023); and (viii) *Susan Comeaux v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2023-505-Div. E (Calcasieu Parish, La. filed Feb. 7, 2023).[1]

---

[1] Contemporaneous with this Notice of Removal, Defendant is filing notices of removal in the *Navarro*, *Guillory*, and *Comeaux* actions.

4. Similar to all of the other putative class actions, the Complaint here alleges that the action is brought based on Defendant's "failure to properly secure and safeguard personally identifiable information including, but not limited to, Petitioners' and Class Members' name, address, date of birth, Social Security number, medical record or patient identification number, health insurance information, payment information, and/or clinical information regarding the care received (collectively, 'Private Information' or 'PII and PHI')." (Ex. A ¶ 1.) Plaintiffs further allege Defendant "maintained the Private Information in a reckless and negligent manner." (*Id.* ¶ 12.) Plaintiffs also contend "there are in excess of 270,000 individuals whose Private Information may have been improperly accessed" in the Incident. (*Id.* ¶ 165.) They bring the action as a result of Defendant's failure to: "(i) adequately protect the Private Information of Petitioners and Class Members; (ii) warn Petitioners and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents." (*Id.* ¶ 19.)

5. Plaintiffs seek to certify a class of "[a]ll persons whose Private Information was actually or potentially accessed or acquired during the Data Breach event that took place on or around October 21, 2022." (*Id.* ¶ 162.) Plaintiffs contend that the putative class is comprised "in excess of 270,000 individuals." (*Id.* ¶ 165.)

6. Plaintiffs allege that, as a result of Defendant's acts or omissions, they and the putative class have suffered "(i) lost or diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the [Incident], including but not

limited to lost time, and (iv) the continued and substantially increased risk to their Private Information…" (*Id.* ¶ 20; *see also* ¶¶ 153-59.) Additionally, Plaintiffs allege they suffered monetary losses, lost time, anxiety, and emotional distress. (*Id.* ¶ 115.)

7. Plaintiffs assert claims on behalf of themselves and a putative class of over 270,000 individuals for negligence, negligence *per se*, Louisiana Unfair Trade Practices and Consumer Protection Laws, breach of implied contract, breach of fiduciary duty, and promissory estoppel and seeks compensatory damages, including restitution, punitive damages, declaratory and injunctive relief, and attorneys' fees. (*Id.* ¶¶ 22, 166, 176, 228, 239, 250, 274.)

8. In accordance with 28 U.S.C. § 1446(a), to the extent the accessible records are complete and current, all process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice as Exhibits A-B.

## TIMELINESS OF REMOVAL

9. Plaintiffs served the Complaint and Summons on Defendant on February 13, 2023. A true and correct copy of the citation and return of service is attached hereto as **Exhibit B**.

10. This removal is timely because Defendant filed this removal within 30 days of Plaintiffs' service of the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## PROPRIETY OF VENUE

11. This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. As such, this Court is the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a), 1446(a).

**GROUNDS FOR REMOVAL**

12. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

**CAFA SUBJECT MATTER JURISDICTION**

13. **Basis of Original Jurisdiction**. This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)-(2)(A); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007).

14. As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Defendant may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs. *See id.*

15. **This Action Is Pled as a Class Action.** CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" 28 U.S.C. § 1332(d)(1).

16. Plaintiffs bring this action as a "class action" and seek class certification under Louisiana law pursuant to La. Code Civ. Proc. Ann. art. 591. (Ex. A ¶ 161.) Because Louisiana's Rule is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the first CAFA element is satisfied. 28 U.S.C. § 1332(d)(1); *see also Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, 367 F. Supp. 3d 555, 561 (E.D. La. Mar. 14, 2019) ("Plaintiff filed his petition as a class action petition pursuant to Louisiana Code of Civil Procedure Article 591 et seq. Such actions are class actions for purposes of CAFA.").

17. **The Putative Class Includes At Least 100 Members.** Plaintiffs purport to bring this action on behalf of themselves and all others similarly situated, including "[a]ll persons whose Private Information was actually or potentially accessed or acquired during the Data Breach event that took place on or around October 21, 2022." (Ex. A ¶ 162.)

18. Plaintiffs assert that the putative Class is comprised of over 270,000 individuals. (*Id.* ¶ 165.) Additionally, Plaintiffs assert that "[t]he Class is apparently identifiable within Defendant's records." (*Id.*)

19. Thus, as pled, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

20. **"Minimal Diversity" of Citizenship Exists.** Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014).

21. As pled in the Complaint, Defendant is a citizen of Louisiana. (Ex. A, ¶ 25.)

22. As pled in the Complaint, Plaintiffs are citizens of Louisiana. (*Id.* ¶¶ 23-24.) But, with over 270,000 putative class members with addresses across the United States, there is minimal

diversity with at least one plaintiff diverse from Defendant. This is especially true with a hospital, where "the Defendant hospitals could have treated and billed persons travelling through the state, persons transported into the state, or persons who were once domiciled in the state but changed their domicile prior to the Petition's filing." *Stewert v. Ruston Louisiana Hospital Co., LLC*, No. 3:14-CV-00083-RGJ, 2014 WL 1246139, at *7 (W.D. La. Mar. 25, 2014), *aff'd,* No. CIV.A. 3:14-0083, 2014 WL 4678606 (W.D. La. Sept. 19, 2014). As such, minimal diversity is met.

23. **The Amount in Controversy Exceeds the CAFA Threshold.**[2] CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6).

24. The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart*, 574 U.S. at 89. Once the proponent of jurisdiction has set out the amount in controversy, "the case should be remanded only if [plaintiffs] can prove to a legal certainty that [their] recovery will fall below" the jurisdictional amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002); *see also Dykes v. Lyft, Inc.*, 551 F. Supp. 3d 618, 622 (M.D. La. 2021).

25. In determining whether the amount-in-controversy requirement is satisfied, a defendant may follow "either of two tracks: (1) Adduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class plaintiff's pleadings alone, it is

---

[2] The amounts set forth in this Notice of Removal are solely for the purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

'facially apparent' that CAFA's amount in controversy is met." *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010) (footnote omitted).  For example, a defendant can offer "testimonial evidence . . . published precedent showing that damages in the instant case and in similar cases would probably exceed [the amount-in-controversy]" and the complaint's injury allegations.  *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57-58 (5th Cir. 1993).  "In addressing such issues about amounts in controversy, it is critical for courts to focus on the phrase 'in controversy' and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction."  *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022).

26. The Complaint does not specify the amount of damages Plaintiffs and putative class members seek in this action.  But the pleaded allegations demonstrate that the putative class members' claims, in the aggregate, exceed the sum or value of $5 million, exclusive of interest and costs.

27. According to the Complaint, over 270,000 individuals were affected by the Incident and comprise the putative class.  (Ex. A ¶ 165.) The Complaint need only plausibly show an amount-in-controversy of more $18.50 per class member to meet the $5 million jurisdictional threshold.  And the allegations in the Complaint plainly meet this threshold.

28. As stated above, Plaintiffs bring this suit for negligence, negligence *per se*, alleged violations of Louisiana Unfair Trade Practices and Consumer Protection Laws, breach of implied contract, breach of fiduciary duty, and promissory estoppel. (*Id.* ¶¶ 178-274.)  They seek, among other relief (including punitive damages), compensatory damages for actual identity theft, lost opportunity costs, compromise of Private Information, out-of-pocket expenses, costs associated with placing freezes on credit reports, continued risk to their Private Information, and present and

continuing costs in terms of time, effort, and money to prevent and repaid the impact to Private Information "for the remainder of the lives of Petitioners and the Class." (*See id.* ¶ 211.) They seek injunctive relief in the form of credit monitoring and business process changes to be made by Defendant. (*Id.* ¶¶ 274, Prayer for Relief.) And they seek treble damages for Defendant's "knowing violations of the Louisiana CPL." (*Id.* ¶¶ 239, 250.)

29. Focusing only Plaintiffs' claims for credit monitoring, the three main identity-protection agencies—Equifax,[3] LifeLock,[4] and Experian[5]—advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. For example, LifeLock offers a product, titled Norton360 with LifeLock, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month. Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 per month. Taking the least expensive product (at $8.99 per month), which costs $107.88 annually, the costs of providing one year of credit monitoring to at least 270,000 individuals alleged to be in the putative class would be $29,127,600, notwithstanding that Plaintiffs allege that the putative class "now face years of constant surveillance of their financial and personal records [and] monitoring." (Ex. A ¶ 64.)

30. Indeed, in data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v.*

---

[3] *See* https:// https://www.equifax.com/personal/ (last visited Jan. 30, 2023).
[4] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited Jan. 30, 2023).
[5] *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606 (last visited Jan. 30, 2023).

*Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same). Thus, the Complaint's request for damages and injunctive relief for credit monitoring costs alone puts more than $5 million in controversy in this case.

31.     Further, Plaintiffs seek injunctive and declaratory relief requiring untold changes to Defendant's cybersecurity practices, such as "for a period of 10 years, appointing a qualified and independent third-party accessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's complaint" and "strengthen[ing] its data security systems and monitoring procedures." (Ex. A, ¶¶ 274, Prayer for Relief.) These purported costs must also be considered in determining the amount-in-controversy. *See Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 847-48 (S.D. Iowa 2013) ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would logically flow* from the granting of the declaratory relief sought by the claimants. For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.") (emphasis in original).

32.     Plaintiffs also seek treble damages under Louisiana's Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401 *et seq.* and La. Rev. Stat. Ann. § 51:3074. Plaintiffs allege Defendant "intentionally, knowingly, and maliciously" violated the

statutes (Ex. A,¶¶ 236, 247), and seek treble damages for Defendant's alleged violations pursuant to the statutes. *See, e.g.*, La. Rev. Stat. Ann. § 51:1409.

33.     Finally, Plaintiffs also seek an award of punitive damages on behalf of themselves and the putative class based on Defendant's purported negligent *per se* conduct. (Ex. A. ¶ 228.) The potential to recover class-wide punitive damages is also included within the amount-in-controversy. *See Allen v. R&H Oil & Gas, Co.*, 63 F.3d 1326, 1337 (5th Cir. 1995).

34.     Based on the minimum compensatory damages for credit monitoring costs calculated above, potential additional punitive damages or treble damages awarded to the class could also exceed the CAFA amount-in-controversy minimum. And combined with Plaintiffs' other damages, the CAFA amount-in-controversy threshold is met here. *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas v. FIA Card Servs., Nat'l Assoc.*, No. 5:14-CV-79, 2014 WL 4954389, at *3 (N.D. W. Va. Oct. 2, 2014) (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted); *Kates v. Chad Franklin Nat'l Auto Sales N. LLC*, No. 08–0384–CV–W–FJG, 2008 WL 3065009, at *2 n.5 (W.D. Mo. July 30, 2008) ("The Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold" of CAFA.).

35.     Thus, because the case is pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Defendant has properly removed the State Court Action to this Court.

**EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY**

36. "The district court can decline jurisdiction under three provisions: (1) the home state exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) the discretionary jurisdiction, § 1332(d)(3)." *Preston*, 485 F.3d at 797; *see* §§ 1332(d)(3)-(4).

37. It is the "plaintiffs [that] have the burden to show the applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application." *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006).

38. Under the local controversy or home state exceptions, a plaintiff has the burden of persuasion on whether two-thirds or more of the members of the proposed class and the primary defendants are citizens of the original filing state. *Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 536, 541 (E.D. La. 2019); *see* 28 U.S.C. § 1332(d)(4)(A)-(B). As noted above, with over 270,000 putative class members with addresses across the United States, there is simply no way to know the citizenship of each class member without speaking directly to each of those 270,000 individuals. This is especially true with a hospital, where "the Defendant hospitals could have treated and billed persons travelling through the state, persons transported into the state, or persons who were once domiciled in the state but changed their domicile prior to the Petition's filing." *Stewert,* 2014 WL 1246139, at *7. And citizenship for purposes of CAFA requires both residence and an intent to remain. *See Preston*, 485 F.3d at 798.

39. Moreover, the local controversy and interests of justice exceptions do not apply because "during the 3-year period preceding the filing of [this] class action, [] other class action[s] ha[ve] been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ." 28 U.S.C. § 1332(d)(4)(A)(ii). Before this action was filed, on January 5, 2023, a substantially similar putative class action was commenced against

Defendant in the Western District of Louisiana, *Felicia Anderson v. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Health System*, No. 2:23-cv-00019 (W.D. La. filed Jan. 5, 2023), asserting allegations and claims on behalf of a putative class of "[a]ll persons in the State of Louisiana whose PII was compromised in the Data Breach[,]" for negligence, negligence *per se*, breach of fiduciary duty, unjust enrichment, and breach of implied contract. (No. 2:23-cv-00019, ECF No. 1 ¶¶ 41, 71-105.)

40.   In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

## NOTICE

41.   As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of Removal with the Clerk of the Court of Calcasieu Parish.

WHEREFORE, Defendant removes the State Court Action from the 14th Judicial District Court for the Parish of Calcasieu, to the United States District Court for the Western District of Louisiana.

Respectfully submitted this 3rd day of March, 2023.

       */s/ William B. Monk*
       William B. Monk
       Louisiana State Bar No. 09551
       **Stockwell Sievert Law Firm**
       Chase Bank Bldg.
       127 W. Broad St., 4th Floor
       Lake Charles, LA 70601
       Telephone: 337-493-7232
       Facsimile: 337-312-2919

       Christopher A. Wiech
       *(Pro Hac Vice Forthcoming)*
       Georgia Bar No. 757333
       Chelsea M. Lamb

(*Pro Hac Vice Forthcoming*)
Georgia Bar No. 524879
**Baker & Hostetler LLP**
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: 404.946.9814
Facsimile: 404.459.5734
cwiech@bakerlaw.com
clamb@bakerlaw.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, a true and correct copy of the foregoing document was served via ECF on all counsel of record and via electronic mail as follows:

Andrew A. Lemmon
**Milberg Coleman Bryson Phillips Grossman, PLLC**
15058 River Road, P.O. Box 904
Hahnville, LA 70057
alemmon@milberg.com

Gary M. Klinger
**Milberg Coleman Bryson Phillips Grossman, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL  60606
gklinger@milberg.com

Bryan L. Bleichner
Philip J. Krzeski
**Chestnut Cambronne PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
bbleichner@chesnutcambronne.com
pkrzeski@chestnutcambronne.com

Joseph M. Lyon
**The Lyon Law Firm, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
jlyon@thelyonfirm.com

    */s/ William B. Monk*
     William B. Monk